**KURT M. ALTMAN, P.L.C**.
Kurt M. Altman (015603)
Ashley Fitzwilliams (035555)
12621 N. Tatum Blvd., #102
Phoenix, AZ 85032
Admin@altmanaz.com
Phone: (602) 689-5100
*Attorneys for Defendant*

# UNITED STATES DISTRICT COURT

# DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>                   Plaintiff,<br><br>      v.<br><br>Jeffrey King,<br><br>                   Defendant. | Case No: CR-24-01040-PHX-ROS<br><br>**DEFENDANT'S RESPONSE TO UNITED STATES' MOTION FOR DETENTION** |

      Jeffrey King, by and through undersigned counsel, hereby files this Response to United States' Motion for Detention and asks this Court to release Mr. King pursuant to the terms of the Bail Reform Act codified in 18 U.S.C. § 3142. Mr. King is neither a flight risk nor danger to the community and should be released on his own recognizance. At a minimum, there are conditions or a combination of conditions that would assure Mr. King's appearance before this Court for all future dates.

      This Response and request for release is supported by the attached Memorandum of Points and Authorities.

*///*

RESPECTFULLY SUBMITTED this 1st day of July 2024.

**KURT M. ALTMAN, P.L.C.**

*/s/ Kurt M. Altman*
Kurt M. Altman
Ashley Fitzwilliams
*Attorneys for Defendant*

I hereby certify that on the 1st day of July 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Roslyn O. Silver
United States District Court Judge
silver_chambers@azd.uscourts.gov

Honorable Deborah M. Fine
United States Magistrate Judge
fine_chambers@azd.uscourts.gov

Matthew Williams
Assistant United States Attorney
matthew.williams3@usdoj.gov

Shane Butland
Assistant United States Attorney
shane.butland2@usdoj.gov


By: */s/ Kurt M. Altman*

# MEMORANDUM OF POINTS AND AUTHORITIES

## I.  PROCEDURAL BACKGROUND:

On June 17, 2024, Mr. King (and his co-defendant, Ms. Alexandra Gehrke) were arrested by law enforcement. The arrest was based on a federal criminal complaint that included one count of conspiracy to commit health care fraud and wire fraud. On June 18, 2024, both Mr. King and Ms. Gehrke were indicted for conspiracy to commit health care fraud and wire fraud (18 U.S.C. § 1349), health care fraud (18 U.S.C. §§ 1347 and 2), conspiracy to defraud the United States and to pay and receive kickbacks (18 U.S.C. § 371), solicitation and receipt of kickbacks (42 U.S.C. §§ 1320a-7b(b) and 18 U.S.C. § 2), and transactional money laundering (18 U.S.C. §§ 1957 and 2).

Mr. King had an initial appearance on June 20, 2024, before United States Magistrate Judge John Z. Boyle, and he set a Detention Hearing for June 25, 2024. On June 24, 2024, at approximately 3:00 p.m., the United States filed a Motion for Detention. On June 25, 2024, during the scheduled Detention Hearing in Mr. King's matter, before United States Magistrate Judge Eileen S. Willett, undersigned counsel requested that the hearing be reset so that Mr. King had an opportunity to respond to the Government's Motion. Judge Willett reset the Detention Hearing for July 2, 2024.

## II.  HISTORY AND CHARACTERISTICS OF MR. KING:

With a few small exceptions as a child and while serving in the United States Army, Mr. King is essentially a life-long resident of Arizona, specifically Phoenix. Prior to his current marriage, Mr. King was married for fourteen years and fathered two children. He has a son who is about to begin high school and a daughter who is 23 years old—they are his world, and he is very close with both. Both his children and his former wife are residents of Phoenix, Arizona.

Throughout most of his life, Mr. King has worked in the music business. Over the years, he has turned down opportunities to leave Arizona and relocate to Los Angeles, California where his

music industry career could truly thrive. However, those opportunities came at the cost of leaving his children, a cost he was unwilling to pay. Mr. King decided to start a recording studio—the Scottsdale Music Company (SMC) (https://www.scottsdalemusiccompany.com/). This gave him the best of both worlds—to work in the industry he loved and to remain in his hometown to raise his kids. The SMC business and community has grown over the last decade, albeit with some setbacks related to the COVID-19 pandemic.

As stated above, some of the time Mr. King spent away from Arizona was spent serving his country in the United States Army. As a result of his service, Mr. King has disabilities including two compressed vertebrae and chronic ankle issue that continue to affect his daily activities.

### III. LAW:

In determining whether to detain or release a defendant, the court must consider: "(1) the nature and seriousness of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's character, physical and mental condition, family and community ties, past conduct, history relating to drug or alcohol abuse, and criminal history; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." 18 U.S.C. § 3142(g), *United States v. Cardenas,* 784 F.2d 937, 938-939 (9th Circ. 1986). A judicial officer "*shall* order the pretrial release of the person on personal recognizance . . . unless the judicial officer determines that such release will not reasonably assure the appearance of the person as required or will endanger the safety of any other person or the community." 18 U.S.C. § 3142(b). If the court finds personal recognizance will not assure the defendant's appearance or protect the community from danger, the "judicial officer shall order the pretrial release of the person … subject to the *least restrictive* further condition, or combination of conditions" the court determines "will reasonably assure the appearance of the person as required and the safety of … the community." 18

U.S.C. § 3142(c)(1)(B). The Bail Reform Act does not modify or limit the presumption of innocence. 18 U.S.C. § 3142(j). The government bears the burden of establishing by "a preponderance of the evidence that the defendant poses a flight risk" or, "by clear and convincing evidence, that [he] poses a danger to the community." *United States v. Aitken,* 898 F.2d 104, 107 (9th Cir. 1990).

Finally, and maybe most importantly in the present matter, it is well established that "the weight of the evidence is the ***least*** important of these factors" to be considered by the judicial officer. *Cardenas*, 784 F.2d at 939. "Section 3142 neither requires nor permits a pretrial determination that the person is guilty." *United States v. Winsor,* 785 F.2d 755, 757 (9th Cir. 1986).

## IV.   ARGUMENT:

Mr. King should be released as he poses no risk of nonappearance for court proceedings and no danger to the community. In their Motion for Detention, the government has essentially asked this Court for "a pretrial determination that the person [Mr. King] is guilty." In making that ask, they relied exclusively on what they believe to be the facts of this case and leaned heavily on their interpretation of those "facts." Although this Court can and should consider the allegations, at this stage of the case (detention), the focus must be on the reasonable assurances that Mr. King will not flee and will appear for his court dates.

There is no doubt that the offenses charged in the indictment are serious. Yet, in an exaggerated attempt to bolster the weight of the evidence, the government repeatedly lumped Mr. King and his co-defendant together when convenient and spun the evidence and events described to a light most favorable for the government's purposes. For instance, the government claimed both "GEHRKE and KING Knew Criminal Charges were Imminent and Were Prepared to Flee Once Charged." Govt's Motion at 7 (heading B). They claim that is evidenced by a note left by Gehrke to her housekeeper. *Id.* Even if true, Mr. King did not write the note and the note is not otherwise

5

**KURT M. ALTMAN, P.L.C.**
12621 N TATUM BLVD., #102
PHOENIX, AZ 85032
(602) 689-5100

linked to Mr. King in anyway. Yet, the government asks that their interpretation of the note be taken as (1) fact and as (2) fact used against both Gehrke AND King.

Additionally, the government asks this Court to attribute to both co-defendants a book allegedly found in the couple's shared residence as evidence of both being a "serious flight risk." *Id.* at 9. The government claims both co-defendants "owned" the book without providing the Court any evidence of where the book was found, who purchased it, or what other items were found in its proximity. Although the government concedes, "ownership of this book would not necessarily be indicative of actual intent to disappear" (*id.* at 9), they again ask this Court to use their interpretation as fact and add it to the scale to tip the evidence in favor of detention for both defendants. The government also found a criminal law handbook in "GERHKE and KING's luggage." *Id.* at 10. They again ask the Court to attribute the possession of that book to both defendants without specifying whose luggage it was found in or any other circumstances surrounding its discovery. They claim it was found in one of the carry-on bags, without even attempting to distinguish between which co-defendant had which bag. What else was in the bag where it was found? Did the bag have a nametag? No one knows but the government gives their interpretation that it is "not the type of book ordinarily brought on a 36-day European vacation, nor a book that a non-lawyer without legal exposure would ordinarily have." *Id.* at 10. Assuming *arguendo* that the government is correct that most people would not have or bring such a book on vacation, it has no bearing on whether Mr. King is a serious flight risk. You can read whatever you like in America. That information should be wholly discounted in weighing the factors.

Further, in its Motion, the government acknowledged that the European vacation was in fact a vacation and would not be permanent, conceding it would end after 36 days. *Id.* This is a fact, and it is further illustrated by the return flight reservation the couple booked. (*See* Attachment A.)

In short, the government spends a 17-page Motion sensationalizing the yet to be proven allegations, to argue that Mr. King is a serious flight risk with little regard for the important factors to be considered by a court in determining if a defendant should be detained pending a trial.

**A. Mr. King's history and characteristics indicate he is not a flight risk nor a danger to the community.**

Mr. King's history and characteristics show him to be an educated, hard-working, active, and contributing member of society who has significant family, professional and social ties to the Arizona community. As stated in the Pretrial Services Report and previously in this Response, Mr. King's entire life is here in Arizona, making his likelihood to flee register at zero. His family and friends are a constant pillar of support for him and will be with him every step of this process. Although there is no doubt that the allegations are serious, Mr. King understands that those allegations not only affect him directly, but also have significant impacts on his loved ones, business associates and friends. Were he to run, he would devastate those he loves most and there is nothing in his history that indicates such conduct is possible or probable. Mr. King has absolutely no criminal history and no history of substance abuse. There is nothing in his past that would indicate that he could not or would not follow this Court's rules and conditions should he be released.

Additionally, Mr. King does not have the means to flee. His passport was seized upon his arrest. And contrary to the government's implications, all of Mr. King's assets—both liquid and non-liquid—have either been seized or frozen by the government. Without a passport or financial resources, Mr. King is literally incapable of fleeing.

Finally, Mr. King's physical health presents another reason for his release. As the pre-sentence report indicates, Mr. King suffers from post-sepsis syndrome resulting from a cat bite almost three years ago. Although it sounds simple, his original ailment was originally misdiagnosed. This

error led to a life-threatening emergency, that was fortunately addressed by the Veteran's Administration Hospital here in Phoenix. The long-term ongoing effects of the sepsis cause mental acuity deficiencies which is treated with Adderall. Since his incarceration, Mr. King has been without his medication which has caused his health to deteriorate. Should he remain in custody, Mr. King's ability to work with counsel to effectively prepare and defend against the allegations would be materially compromised.

Mr. King is confident that when this Court's analysis is focused on the essential factors listed in 18 U.S.C. § 3142(g) it becomes clear that he is not a "serious flight risk" and his release is appropriate and warranted under the law. Nothing in Mr. King's history indicates he would fail to appear as instructed. However, should this Court have even the slightest of concerns, there are a myriad of tools at the Court's disposal to mitigate those concerns. To name a couple tools: Mr. King's adult daughter or another family member could be evaluated as an appropriate third-party custodian. Mr. King could also be outfitted with a GPS monitoring system that would always alert Pretrial Services to his whereabouts.

Finally, Mr. King poses no danger to any community. There is nothing in his history or personal characteristics that indicates he poses any threat of danger to the community. In fact, even the government does not appear to be seeking detention on the theory of danger to the community. As such, a finding of detention based on danger is unwarranted.

## V.     CONCLUSION:

For the reasons stated herein, defendant, Mr. Jeffrey King, respectfully requests that he be released from detention pursuant to the terms of the Bail Reform Act codified in 18 U.S.C. § 3142, pending conclusion of this case.

///

RESPECTFULLY SUBMITTED this 1st day of July 2024.

**KURT M. ALTMAN, P.L.C.**

*/s/ Kurt M. Altman*_____
Kurt M. Altman
Ashley Fitzwilliams
*Attorneys for Defendant*

I hereby certify that on the 1st day of July 2024, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF system for filing and transmittal of a Notice of Electronic Filing to the following CM/ECF registrants:

Honorable Roslyn O. Silver
United States District Court Judge
silver_chambers@azd.uscourts.gov

Honorable Deborah M. Fine
United States Magistrate Judge
fine_chambers@azd.uscourts.gov

Matthew Williams
Assistant United States Attorney
matthew.williams3@usdoj.gov

Shane Butland
Assistant United States Attorney
shane.butland2@usdoj.gov


By: */s/ Kurt M. Altman*_____

**ATTACHMENT A**



American

Your trip confirmation and receipt

Confirmation code: **AQQSDS**

**Saturday, 20 July 2024**

**ATH**
Athens
**1:15 PM**

**AA 759**

**PHL**
Philadelphia
**5:00 PM**

Seat:
Class: **Business (J)**
Meals: **Lunch , Snack**

**PHL**
Philadelphia
**6:52 PM**

**AA 1984**

|  |  |
|---|---|
| **PHX** <br> Phoenix <br> **8:59 PM** | Seat: <br> Class: **Business (J)** <br> Meals: **Dinner** |

[ Manage your trip ]

## Your purchase

**Alexandra Gehrke**

Join the AAdvantage® Program

New ticket (0012150776229)     €5,711.32
[€5,286.00 + Taxes & carrier-imposed fees €425.32]

**Jeffrey King**

New ticket (0012150776230)     €5,711.32
[€5,286.00 + Taxes & carrier-imposed fees €425.32]

**Total cost** (all passengers)     **€11,422.64**

## Your payment

AmericanExpress (ending 1005)     €11,422.64

Total paid     €11,422.64

## Bag information

**Checked Bag (Airport)**

1st bag    No charge
2nd bag    No charge

Maximum dimensions: 62 inches or 158 centimeters calculated as (length + width + height)
Maximum weight: 70 pounds or 32 kilograms

For information regarding American Airlines checked baggage policies, please visit: Bag and optional fees

Bag fees apply at each Check-in location. Additional allowances and/or discounts may apply. Bag and optional fees

If your flight is operated by a partner airline, see the other airline's website for carry-on and checked bag policies.

Carry-on bags (American Airlines)

| | |
|---|---|
| 1st carry-on | Includes purse, briefcase, laptop bag, or similar item that must fit under the seat in front of you. |
| 2nd carry-on | Maximum dimensions not to exceed: 22" long x 14" wide x 9" tall (56 x 35 x 23 cm). |

   

Book a hotel »     Book a car »     Buy trip insurance »     AAVacations »



Contact us
Privacy policy

**Download the American app**

 

© 2024 American Airlines, Inc. All Rights Reserved.



Additional Services are subject to credit card approval at time of ticketing. Additional Services may appear on multiple accompanied documents as a matter of reference.

If you have purchased a NON-REFUNDABLE fare, the itinerary must be canceled before the ticketed departure time of the first unused coupon or the ticket has NO VALUE. If the fare allows changes, a fee may be assessed for changes and restrictions may apply.

You have up to 24 hours from the time of ticket purchase to receive a full refund if you booked at least 2 days before departure. Once canceled, your refund will be processed automatically. Refunds.

Some American Airlines check-in counters do not accept cash as a form of payment. For more information, visit our Airport Information page.

The policy for traveling with Emotional Support and Service animals has changed. Visit Traveling with Service Animals for more information.

        

Some everyday products, like e-cigarettes and aerosol spray starch, can be dangerous when transported on the aircraft in carry-on and/or checked baggage. Changes in temperature or pressure can cause some items to leak, generate toxic fumes or start a fire. Carriage of prohibited items may result in fines or in certain cases imprisonment. Please ensure there are no forbidden hazardous materials in your baggage like:

Some Lithium batteries (e.g. spares in checked baggage, batteries over a certain size), Explosives / Fireworks, Strike anywhere matches/ Lighter fluid, Compressed gases / Aerosols Oxygen bottles/ Liquid oxygen, Flammable liquids, Pesticides/ Poison, Corrosive material.

There are special exceptions for small quantities (up to 70 ounces total) of medicinal and toilet articles carried in your luggage, spare lithium batteries for most consumer electronic devices in carry-on baggage, and certain smoking materials carried on your person.

Certain items are required to be carried with you onboard the aircraft. For example, spare lithium batteries for portable electronic devices, cigarette lighters and e-cigarettes must be removed from checked or gate-checked baggage and carried onboard the aircraft. However, e-cigarettes may not be used on-board the aircraft.

Traveling with medical oxygen, liquid oxygen, mobility aids and other assistive devices may require airline pre-approval or be restricted from carriage entirely. Passengers requiring these items should contact the airline operator for information on use of such devices.

NOTICE OF INCORPORATED TERMS OF CONTRACT

Air Transportation, whether it is domestic or international (including domestic portions of international journeys), is subject to the individual terms of the transporting air carriers, which are herein incorporated by reference and made part of the contract of carriage. Other carriers on which you may be ticketed may have different conditions of carriage. International air transportation, including the carrier's liability, may also be governed by applicable tariffs on file with the U.S. and other governments and by the Warsaw Convention, as amended, or by the Montreal Convention. Incorporated terms may include, but are not restricted to: 1. Rules and limits on liability for personal injury or death, 2. Rules and limits on liability for baggage, including fragile or perishable goods, and availability of excess valuation charges, 3. Claim restrictions, including time periods in which passengers must file a claim or bring an action against the air carrier, 4. Rights on the air carrier to change terms of the contract, 5. Rules on reconfirmation of reservations, check-in times and refusal to carry, 6. Rights of the air carrier and

limits on liability for delay or failure to perform service, including schedule changes, substitution of alternate air carriers or aircraft and rerouting.

You can obtain additional information on items 1 through 6 above at any U.S. location where the transporting air carrier's tickets are sold. You have the right to inspect the full text of each transporting air carrier's terms at its airport and city ticket offices. You also have the right, upon request, to receive (free of charge) the full text of the applicable terms incorporated by reference from each of the transporting air carriers. Information on ordering the full text of each air carrier's terms is available at any U.S. location where the air carrier's tickets are sold or you can click on the Conditions of Carriage link below.

Air transportation on American Airlines and the American Eagle carriers® is subject to American's conditions of carriage.

For more on Canada passenger protection regulations visit aa.com/CanadaPassengers.

Please do not reply to this email address as it is not monitored. This email was sent to theconsultingfirm2000@gmail.com.

NOTICE: This email and any information, files or attachments are for the exclusive and confidential use of the intended recipient. This message contains confidential and proprietary information of American Airlines (such as customer and business data) that may not be read, searched, distributed or otherwise used by anyone other than the intended recipient. If you are not an intended recipient, do not read, distribute, or take action in reliance upon this message. Do you think you received this email by mistake? If so, please forward this email to us with an explanation.

For all other questions about bookings or upcoming trips, visit our contact page. Contact American >

**one**world is a registered trademark of **one**world Alliance, LLC.