Brian T. Rafferty, Esq.
Ga. Bar #311903
Admitted Pro Hac Vice
Rafferty Law, LLC
1575 Johnson Road NE
Atlanta, GA 30306
912.658.0912
brian@raffertylawfirm.com
Attorney for Defendant Jeffrey King

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>JEFFREY KING, ET AL.,<br>Defendants. | Case No.: 2:24-CR-01040-ROS-2<br><br>**DEFENDANT JEFFREY KING'S MOTION TO REVOKE PRETRIAL DETENTION ORDER** |

Under 18 U.S.C. § 3161(h)(1)(D), this motion may cause excludable delay.

Defendant Jeffrey King (referred to herein as "King"), by and through undersigned counsel and pursuant to 18 U.S.C. § 3145(b), respectfully moves this Court to revoke the Pretrial Detention Order (ECF No. 32) that was issued by United States Magistrate Judge Alison S. Bachus on July 9, 2024. King has no criminal history, is not a flight risk and there are conditions or a

combination of conditions that would assure King's future appearance in Court. King therefore respectfully requests pretrial release with conditions.

## I. PROCEDURAL HISTORY

On June 17, 2024, King was arrested on a criminal complaint charging him with Conspiracy to Commit Wire Fraud and Health Care Fraud in violation of Title 18, United States Code, Section 1349. ECF No. 3. On June 18, 2024, a federal grand jury sitting in the District of Arizona returned an indictment charging King with Conspiracy to Commit Wire Fraud and Health Care Fraud in violation of Title 18, United States Code, Section 1349; Health Care Fraud in violation of Title 18, United States Code, Section 1347; Conspiracy to Defraud the United States and to Pay and Receive Kickback in violation of Title 18, United States Code, Section 371; Solicitation and Receipt of Kickbacks in violation of Title 42, United States Code, Section 1320a-7b(b); and Transactional Money Laundering in violation of Title 18, United States Code, Section 1957. ECF No. 6.

On June 20, 2024, King was interviewed by the Pretrial Services Division of the United States Probation Office for the District of Arizona, which prepared a written report of that interview and recommended that King be released with conditions. ECF No. 11. That same day, King had his initial appearance and arraignment on the Indictment. ECF No. 16. On June

24, 2024, the government filed its Motion for Detention as to King. ECF No. 18. A detention hearing for King was initially set for June 25, 2024, but counsel for King requested a continuance to file a response to the government's Motion for Detention. ECF No. 25. The detention hearing was rescheduled for July 2, 2024, and counsel for King filed his Response to the government's Motion for Detention on July 1, 2024. ECF No. 27. The detention hearing was continued a second time and rescheduled for July 9, 2024.

On July 9, 2024, King's detention hearing was held before Magistrate Judge Alison S. Bachus in the United States District Court for the District of Arizona. At the hearing, the government proceeded by proffer and offered argument and three exhibits in support of its Motion for Detention. Counsel for King responded with argument and offered three exhibits in support of his request for pretrial release. At the conclusion of the hearing, Magistrate Judge Bachus issued an order finding that there is a serious risk that the defendant will flee, and no condition or combination of conditions will reasonably assure the appearance of the defendant as required. ECF No. 32.

## II. LEGAL AUTHORITIES

"The Bail Reform Act of 1984, 18 U.S.C. § 3141 *et seq*., requires the

release of a person facing trial under the least restrictive condition or combination of conditions that will reasonably assure the appearance of the person as required and the safety of the community." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991). "Only in rare circumstances should release be denied, and doubts regarding the propriety of release should be resolved in the defendant's favor." *Id.* "On a motion for pretrial detention, the government bears the burden of showing by a preponderance of the evidence that the defendant poses a flight risk, and by clear and convincing evidence that the defendant poses a danger to the community." Id.

18 U.S.C. § 3142(g) specifies the factors the court must consider in determining whether any conditions of release will reasonably assure the appearance of the person: (1) the nature and circumstances of the offense charged; (2) the weight of the evidence against the defendant; (3) the defendant's history and characteristics, including his character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, any record concerning appearance at court proceedings, and whether at the time of the offense the person was on probation or parole; and (4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's

release. See id. § 3142(g). "Of these factors, the weight of the evidence is the least important, and the statute neither requires nor permits a pretrial determination of guilt." *Gebro*, 948 F.2d at 1121.

Section 3145(b) of the Bail Reform Act states in pertinent part that "[i]f a person is ordered detained by a magistrate...the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the Order. The motion shall be determined promptly." When reviewing an order of detention, "the district court is to make its own 'de novo' determination of the facts, whether different from or an adoption of the findings of the magistrate." *United States v. Koening*, 912 F.2d 1190, 1193 (9th Cir. 1990). "[T]he district court's review of a magistrate's detention order is to be conducted without deference to the magistrate's factual findings." *Id.* at 1192. "In doing so, the district court may, but is not required to, conduct additional evidentiary hearings." *Id.* at 1193.

Here, the government presented speculative and misleading evidence in support of its Motion for Detention, and the Magistrate Judge erred by relying on the government's proffer and finding that King presents a risk of flight. As noted by the United States Department of Probation in the Pretrial Services Report, there are conditions or combination of conditions that would reasonably assure the appearance of King as required.

## III. ARGUMENT

In ordering that King be detained, the magistrate court relied largely on the government's proffer about the serious nature of the charged offenses, the strength of the government's evidence and other evidence that the government contends creates a serious risk of flight. Yet in much of the government's Motion for Detention and proffer, the government relies on misleading evidence to justify detention. For example, the government went into some detail describing a handwritten note, marked as Government Exhibit 3 at the Detention hearing, that it claimed was found in King's office. GX 3; ECF No. 57 at 12-14. The government emphasized to the Court that the handwritten note was found in King's home office and argued that it showed an intent by King to buy Maltese citizenship which would allow King to travel freely in Europe as well as to bank through the Cook Islands to Swiss Banks. *Id.* at 14. In ruling in favor of the government for detention, the Magistrate Court specifically relied on this evidence proffered by the government about this handwritten note and its location in King's home office in the Detention Order. ECF No. 32 at 3.

The problem is that the government's proffer about King's connection to this handwritten note and where it was found was incorrect. On July 22, 2024, after the Detention Hearing and after the Magistrate Court issued its

Order of Detention, the undersigned, who did not represent King at the Detention Hearing, emailed the government to obtain any photographs showing that this handwritten note was in fact found in King's home office. That same day, in response to this request, the government revealed that the handwritten note was not found in King's home office as was proffered at the Detention Hearing, but was instead found in Safety Deposit Box #3961 which the government claimed was controlled by King and his codefendant wife, Alexandra Gehrke.

While the government now claims that King controlled this safety deposit box, the government previously swore in the government's probable cause affidavit in support of the arrest of King that Safety Deposit Box #3961 was opened by others and not King, and that the access logs for this box show that King never accessed it. ECF No. 3 at 42-43. Thus, the evidence about this handwritten note shows that it was not written by King, was never seen by King, was not in King's home office as represented by the government, and was instead found in a safety deposit box controlled by and used by others with no evidence King ever accessed it. In sum, there is no evidence connecting King to this handwritten note about Maltese citizenship and Swiss banks, yet the magistrate court relied on the government's proffer

about King's connection to this handwritten note and specifically cited to it in detaining King. ECF No. 32 at 3. That alone must be error.

This handwritten note was not the only evidence that had no meaningful connection to King that was relied on by the magistrate court in ordering King's detention prior to trial. The government proffered evidence of other handwritten notes of his codefendant, yet provided no evidence connecting King to these notes. ECF No. 57 at 15-16. The government proffered evidence of a book found in carry-on baggage at the airport but offered no specific evidence connecting that book to King, and yet the magistrate court cited to this book in its Order of Detention of King. ECF No. 32 at 2. The government proffered evidence of a book found in King's marital home but offers no specific evidence connecting that book to King, yet the magistrate court cited to this book in its Order of Detention. *Id.* at 3. The government proffered evidence of a plane owned by a friend of King's wife as further evidence that King was a risk of flight, yet the government offered no specific evidence connecting King to the plane. Indeed, the owner of the plane is not a "close friend" of King; King never accessed or flew on this plane; and the government proffered no evidence to show otherwise. Yet the magistrate court cited to the evidence related to this plane in the Order of

Detention. *Id.* The reliance on this other evidence with no meaningful connection to King must also be error.

Next, the government relied on evidence of King's purported wealth and his failure to disclose certain assets to Pretrial Services in his pretrial services interview, as further evidence that King was a risk of flight. The government offered no evidence about the circumstances surrounding this pretrial services interview, including how King was questioned, how long the interview lasted, whether King appeared evasive to the pretrial services officer during the interview, or whether pretrial services even asked about King's net worth. Yet the government successfully argued to the Court that King lacked candor because he misstated his "net worth." ECF No. 57 at 20; ECF No. 32 at 3. Moreover, the government falsely suggested that King was moving assets in a way to avoid detection by pointing to a withdrawal on April 26, 2024, but failed to acknowledge that this was not a withdrawal but instead transactions conducted in response from a direction from the bank to close his account. ECF No. 57 at 14, 26.

The fact remains that during that same Pretrial Services interview in which the government claims King lacked candor, King disclosed millions of dollars in assets to the Pretrial Services Office, which, knowing of those substantial assets, recommended King be released with conditions. At

bottom, white-collar cases often involve individuals with significant wealth, and that wealth alone is not sufficient to justify detention of defendants prior to trial. There are conditions or combination of conditions that could resolve any concerns about King's purported wealth, and the magistrate court erred in not imposing those conditions.

Last, the magistrate court cited to the maximum penalties should King be convicted, and the strength of the evidence against King, in further support of its conclusion that King is a serious risk of flight. Yet King has not been convicted and the government's purported evidence has been untried and uncontested, with the notable exception of the aforementioned handwritten note about Maltese citizenship—and the testing of that evidence has proven that the government's proffer was incorrect about that note and suggests the government's case may not be as strong as represented in its proffer. As King's prior counsel noted during the hearing, the government did not really present evidence but instead speculated repeatedly that "there may be money out there," "that might have been," or "it's probable"—these kinds of statements are not evidence. ECF No. 57 at 24. In any event, "the weight of the evidence is the least important" of the factors set forth in the Bail Reform Act and "doubts regarding the propriety of release should be

resolved in defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

King's history and characteristics, given no weight by the government in its proffer, weigh heavily in favor of release with conditions. King has no criminal history at all, no recent history of drug or alcohol abuse, with strong ties to Phoenix. He is a dedicated father of two children, who are the center of King's life and with whom he cares for regularly and shares joint custody with his ex-wife. King would never leave the children he loves and flee the jurisdiction. King has other strong community ties, including his ownership of a music studio in Phoenix, and many friends who care deeply about him and his well-being, as evidence by the compilation of letters found attached to the instant motion. *See* Attachment A. King is also a veteran, who served this country and is burdened with physical maladies from his service, including spinal cord issues and chronic pain from an ankle injury. In short, King's history and characteristics demonstrate that detention is unwarranted and that there are conditions or combination of conditions that would reasonably assure his future appearance in Court.

## IV. CONCLUSION

As evidenced by the Pretrial Services Report in this case, there are

less restrictive alternatives to detention that will ensure King's future appearance in this case. Mr. King is a military veteran, dedicated father to two children that are the center of his life, with strong ties to Phoenix having spent most of his life in the community. He has no criminal history, no recent history of drug or alcohol abuse, and suffers from spinal injuries and chronic ankle pain that stems from his military service. Although he is charged with serious crimes, the evidence against him is untried and untested, and his character, physical and mental condition, family and community ties, past conduct and history all demonstrate that less restrictive alternatives to detention can be set in this case. Mr. King submits that the imposition of stringent conditions, including home confinement, GPS monitoring, and the imposition of a bond with third party financial sureties, would be sufficient to assure his future appearance in Court.

Dated this 23th of July, 2024.

Respectfully submitted,

*<u>/s Brian T. Rafferty</u>*<u>, Esq.</u>
Brian T. Rafferty, Esq.