Brian T. Rafferty, Esq.
Ga. Bar #311903
Admitted Pro Hac Vice
Rafferty Law, LLC
1575 Johnson Road NE
Atlanta, GA 30306
912.658.0912
brian@raffertylawfirm.com
Attorney for Defendant Jeffrey King

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>JEFFREY KING, ET AL.,<br>Defendants. | Case No.: 2:24-CR-01040-ROS-2<br><br>**DEFENDANT JEFFREY KING'S REPLY IN FURTHER SUPPORT OF MOTION TO REVOKE PRETRIAL DETENTION ORDER** |

Defendant Jeffrey King (referred to herein as "King"), by and through undersigned counsel, respectfully files this Reply in further support of his Motion to Revoke Pretrial Detention Order (ECF No. 59).

## INTRODUCTION

It is undisputed that the government provided false information to the magistrate court during King's detention hearing, and that the magistrate court relied on and specifically cited to that false information in

finding that King is a risk of flight. (ECF No. 32 at 3). That alone warrants revocation of the Pretrial Detention Order and King's release on conditions. In its Response to King's Motion to Revoke Pretrial Detention Order, the government attempts to push aside the false information it provided to the magistrate court in support of detention, by citing to evidence it claims evinces an intent to flee, including handwritten notes, books and access to an airplane, that relates to others and has little or no connection to King. (*See* ECF No. 64).

King served this country in the military and was honorably discharged. He has no criminal history whatsoever, no past misconduct, no record of nonappearance and no history of drug or alcohol abuse. It is undisputed that King has strong ties to the community, having spent most of his life in Arizona. King has joint custody of his two children who are the center of his life and who he would never abandon.

In short, considering all of the factors set forth in 18 U.S.C. § 3142(g), there are conditions of release that will reasonably assure King's future appearance in Court. Indeed, the Pretrial Services Report in this case recommended that King be released with very limited conditions of release. King is willing to submit to more stringent conditions than was recommended by Pretrial Services, including home confinement, GPS

monitoring, and the imposition of a bond with third party financial sureties, to assure his future appearance in Court.

## ARGUMENT

### I. False Information Relied upon by the Magistrate Court in Detaining King Warrants Revocation of the Detention Order.

The false information provided by the government about handwritten notes purportedly found in King's home office about buying Maltese citizenship and banking in the Cook Islands was a centerpiece of the government's case for detention. Indeed, the Magistrate Court specifically relied on that evidence in the Detention Order. ECF No. 32 at 3. In truth, there was no evidence connecting King to this handwritten note—he did not write it, never saw it, it was not in his office, and it was found in a safety deposit accessed by others and not King.

Faced with the fact that the Detention Order cites to false information about King's possession of this note, the government speculates that because King was listed as an "additional client" on the safe deposit box lease, he "could have" accessed the contents of this box. But there is no evidence that he did, and the only person who accessed that safety deposit box was not King. The government's speculation cannot overcome the fact that the government has offered no evidence showing King had ever seen

the note or even had knowledge of its existence. It also does not change the specific findings in the Detention Order that falsely connect this note to King because of the government's false claim that the note was found in King's home office. The inclusion of that false information in the Detention Order alone is sufficient to warrant revocation of it and the release of King on conditions.

## II. Wealth Evidence Is Insufficient to Warrant Detention.

Next, the government's Response to King's Motion to Revoke Detention Order focuses heavily on wealth evidence, including evidence in bank accounts and evidence found in safety deposit boxes, as evidence that "could be used to fund his flight." (ECF No. 64 at 11).

As it relates to the wealth evidence found in his safety deposit boxes, there is nothing unusual about King storing items of value, including gold bars, in a safety deposit box. And as it relates to the gold bars, the government's own evidence shows that King purchased those in September 2023, almost a year before his arrest. *Id.* at 11. The government has offered no evidence (because there is none) that King purchased these gold bars "to fund his flight." In any event, the government has seized all of the evidence of wealth in these safety deposit boxes, so they have no bearing on whether King currently represents a risk of flight.

Regarding money held in bank accounts King owned or controlled, King's financial resources alone are insufficient to establish King as a risk of flight warranting detention. There are conditions that could alleviate any concerns posed by King's wealth, including the imposition of third-party sureties, GPS monitoring and home confinement. Indeed, the Pretrial Services Officer knew that King had substantial financial resources, and recommended his release.

### III. Evidence about Books, Other Handwritten Notes and a Private Plane Should Have No Bearing on Detention.

The government's Response in Opposition to King's Motion to Revoke Detention Order continues to cite to a variety of other evidence that has no meaningful connection to King. For example, the government references a book found in King's wife's closet and another book found in a carry-on bag, as evidence of King's intent to flee. Yet, neither book is connected to King and the government has offered no evidence showing otherwise. Similarly, the government refers to a handwritten note in King's wife's datebook about burner phones written in November 2023. The note was written before King and his wife were married, was apparently authored by King's wife and not King, and the government offers no evidence showing King had any knowledge of the note or its reference to "burner phones." Last, the government once again points to a private plane

possessed by a friend of King's wife as evidence creating a risk of flight. Yet, the government ignores the fact that the owner of this plane is not a friend of King, and offers no evidence connecting King to this plane at all. And the idea that someone who is not a friend of King would allow King to use her plane to flee the United States is simply not credible.

At bottom, the government's evidence related to books, handwritten datebook entries and this plane, have nothing to do with King and have no bearing on whether King should be released on conditions.

### IV. King Denies Lying to Pretrial Services and CBP.

Last, the government argues that King should be detained because he purportedly lied to Pretrial Services and CBP. King denies that he lied to Pretrial Services, and submits the government's failure to introduce evidence about the length of the interview, manner and type of questions, and King's demeanor is relevant. King submits he was asked about his annual income and he disclosed $400,000/year; he was asked about his investments and he disclosed $2.1 million in stocks and bonds (which matches the investment portfolio listed on Government Exhibit 2); he was asked about foreign travel and disclosed a recent trip to Nassau and was arrested on the way to London. In short, in response to specific questions from the Pretrial Services Officer, King disclosed substantial assets and

evidence of foreign travel. If King was truly attempting to mislead the Court and Pretrial Services, as suggested by the government, it would make no sense to reveal his possession of millions of dollars in assets and foreign travel as he did during his interview.

Similarly, King denies that he ever intentionally lied to CBP—he submits that the only time he was ever asked about cash on his person was as he was arrested on the gangway leading to the plane. To the extent King did not disclose certain information, King denies that he did so intentionally and instead submits he did so because of the circumstances the questioning by CBP, handcuffed on the gangway to the plane. King's response to inquiries by CBP should have no bearing on whether there are conditions or combination of conditions that would insure his future appearance in Court.

**V. King Should be Released with Conditions.**

The government acknowledges, as it must, that King has substantial ties to the community, having spent most of his life in Arizona. King's other history and characteristics also weigh heavily in favor of release with conditions. As previously noted, King served this country honorably as an Infantrymen in the United States Army, and continues to receive treatment for medical issues stemming from his service. He has no criminal history,

no record of nonappearance in court, and no history of drug or alcohol abuse. King has strong family and community ties as evidenced by the compilation of letters submitted as Attachment A to King's Motion to Revoke Detention Order, and as further demonstrated in the additional letters attached to the instant Reply. *See* Attachment B. King is dedicated father to his two children, both of whom have submitted emotional letters of support and who rely on their father for love, support and guidance. The deep connection between King and his children as reflected in their letters belies any suggestion that he would leave them and flee. In short, King's personal history and characteristics weigh heavily in favor of release with conditions.

## **CONCLUSION**

"In our society liberty is the norm, and detention prior to trial or without trial is the carefully limited exception." *United States v. Salerno*, 481 U.S. 739, 755 (1987). The case of Jeff King is not an exception to this rule in favor of liberty, he should be released on conditions. The Pretrial Services Officer in this case agreed that Mr. King should be released, and wrote in her report that there are less restrictive alternatives to detention that will ensure King's future appearance in this case. But the magistrate court, persuaded by false and misleading evidence presented by the

government, ruled otherwise and detained Mr. King prior to trial. Swayed by the government's proffer of false and misleading evidence, the magistrate court failed to properly weigh Mr. King's military service, strong family ties, deep connections to the community, lack of any criminal history, and absence of drug or alcohol abuse history.

Although he is charged with serious crimes, the evidence against him is untried and untested, and his character, physical and mental condition, family and community ties, past conduct and history all demonstrate that less restrictive alternatives to detention can be set in this case. Mr. King submits that the imposition of stringent conditions, including home confinement, GPS monitoring, and the imposition of a bond with third party financial sureties, would be sufficient to assure his future appearance in Court. Mr. King therefore requests that the Court revoke the Detention Order, and release Mr. King on conditions.

Dated this 6th of August, 2024.

Respectfully submitted,

*/s Brian T. Rafferty*, Esq.
Brian T. Rafferty, Esq.