Brian T. Rafferty, Esq.
Ga. Bar #311903
Admitted Pro Hac Vice
Rafferty Law, LLC
1575 Johnson Road NE
Atlanta, GA 30306
912.658.0912
brian@raffertylawfirm.com
Attorney for Defendant Jeffrey King

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| UNITED STATES OF AMERICA,<br>Plaintiff,<br><br>vs.<br><br>JEFFREY KING, ET AL.,<br>Defendants. | Case No.: 2:24-CR-01040-ROS-2<br><br>**DEFENDANT JEFFREY KING'S FURTHER REPLY TO KING'S MOTION TO REVOKE PRETRIAL DETENTION ORDER** |

Defendant Jeffrey King (referred to herein as "King"), by and through undersigned counsel, respectfully files this Reply in further support of King's Motion to Revoke Pretrial Detention Order. *See* ECF. No. 59.

## INTRODUCTION

The Magistrate Court issued an Order detaining King based in part upon false information provided by the government purportedly connecting King to a handwritten note referencing Maltese citizenship. The Order of

Detention specifically references this false information as a basis for detaining King. *See* ECF No. 32 at 3. King timely filed his Motion to Revoke Detention on July 23, 2024, noting, among other things, that the information relied upon by the magistrate court was false. *See* ECF No. 59.

In pleadings and during the course of two detention hearings, King has: (1) established that the information proffered by the government connecting him to the handwritten note referencing Malta and relied upon the magistrate court in detaining King was entirely false; (2) offered to surrender custody of any assets identified by the government, and other assets King's counsel has located, to the government pending the outcome of this case; (3) been recommended for pretrial release by Pretrial Services in three separate written reports, two of which were written <u>**after**</u> the government lodged allegations that King lied to Pretrial Services during his Pretrial Services interview; and (4) offered to be subject to conditions upon release that are far greater than the conditions recommended by Pretrial Services, including surrendering any assets, wearing an ankle monitor subject to house arrest and GPS monitoring, surrendering his own passport, and surrendering the passport of his children.

In the government's Response to King's Supplement to King's Motion to Revoke Pretrial Detention Order, the government strains to have King

detained pending trial, by first focusing largely on assets owned and controlled by people other than King that the government claims could be used by King to flee, and second, by referencing alleged false statements made by King to Pretrial Services which the government also claims makes King a risk of flight. The government's arguments in both respects fail to establish by a preponderance of the evidence that King is a risk of flight or that there are no conditions or combination of conditions that would insure King's future appearance in Court. King therefore renews his request to revoke the Order of Detention and his request to be released on conditions.

## I. KING HAS OFFERED TO RELINQUISH CUSTODY OF CONTROL OF HIS ASSETS

In response to expressed concerns by the government and the Court about King's access to his own assets, King, through counsel, offered to relinquish custody and control of the assets identified by the government pending the outcome of the criminal case. This not only includes assets specifically identified by the government, but also includes other assets located by the undersigned, including approximately $1 million held by an attorney in connection with a construction project, along with recording equipment that is of substantial value. The undersigned provided contact information for this attorney and a description of the recording equipment

at issue to the government, and the government has interviewed that attorney.

In response to questions by the government about other assets, including an investment in a movie project, the undersigned provided contact information for the individual associated with that investment, and the government has interviewed that individual as well. In short, King has fully cooperated with the government in identifying assets subject to seizure during the pendency of this case, and agreed to forfeit custody or control of them during the pendency of this case. And in fact, the government has seized some of those assets already, and appears ready to seize the remainder. King's cooperation, and his willingness to relinquish all of these assets to the government, are not the actions of an individual who presents a risk of flight.

## II. <u>ASSETS OWNED AND CONTROLLED BY ALEXANDRA GEHRKE AND KING'S ASSOCIATES</u>

Next, the government suggests that because King's wife, Alexandra Gehrke, has substantial assets at her disposal, she might permit King to access those assets to flee because King is her husband and would be one of the strongest potential witnesses against Gehrke at trial. Upon information and belief, Gehrke is already cooperating with the government against King, and is expected to plead guilty. Considering these

circumstances, it is disingenuous of the government to suggest that Gehrke would provide King access to her assets so King could flee because King would be one of the strongest witnesses against Gehrke at trial, when the government knows Gehrke is actively cooperating against King, is going to plead guilty, and that there will be no trial of Gehrke's case. More important for the purposes of King's Motion to Revoke the Detention Order, any assets owned or controlled by Gehrke have no bearing on whether King is a risk of flight.

Next, the government raises the prospect of other "sales representatives" providing King with access to their assets to facilitate King's flight. The government previously made this argument in its Response to the Court's Order at the August 29, 2024 Detention Hearing (*See* ECF No. 83 at 10), and during the September 3, 2024 hearing. The Court disposed of this contention during the September 3, 2024 hearing as speculative. *See* ECF No. 98 at 65-66. This argument by the government was speculative then, is speculative now, and has no bearing on whether King is a risk of flight.

## III. <u>ASSETS PURPORTEDLY NOT IDENTIFIED BY KING</u>

The government speculates that King has access to unknown

other assets not identified by the government that could be used to facilitate King's flight. In support of this contention, the government points to a handwritten note concerning the purchase of some guitars for $159,000. *See* ECF No. 104 at 5. King, through counsel, has already described the nature of his music business to the Court, and that as part of that business, he buys and sells musical equipment. This note evinces exactly that, an example of King using funds to purchase musical equipment for his music business. King no longer has this money, and it provides no support for the government's contention that King has access to other funds or is a risk of flight.

The government then turns to two schematics found in King's office as evidence of other assets King may possess. These notes reflect discussions between King and his counsel at the time, are subject to the attorney-client privilege, and King has not waived that privilege. The government therefore should not have them in their possession, should not have reviewed them and the contents of these documents should have no bearing on the question of King's detention.[1]

[1] Notably, this is the second time the government has submitted a document to the Court in support of its argument to detain King that was subject to the attorney-client privilege and which the government should not have possessed or used to support detention. *See* ECF No. 23 (under seal); *See also* ECF No. 57 at 4.

## IV. STRENGTH OF THE EVIDENCE AND POTENTIAL SENTENCE

Next, the government points to the strength of the government's case, and the potential penalties should King be convicted, as further evidence that King should be detained. But King has not been convicted in this case, and the government's purported evidence has been untried and uncontested, with the notable exception of the handwritten note about Maltese citizenship—and the testing of that evidence has proven that the government was incorrect about the significance of that evidence as to King. In any event, "the weight of the evidence is the least important" of the factors set forth in the Bail Reform Act and "doubts regarding the propriety of release should be resolved in defendant's favor." *United States v. Gebro*, 948 F.2d 1118, 1121 (9th Cir. 1991).

## V. KING'S PURPORTED LIES, MISREPRESENTATIONS, AND OMISSIONS

Last, the government argues King should be detained because of alleged lies, misrepresentations and omissions during King's Pretrial Services interview. The government claims that Pretrial Services only recommended that King be released because of purportedly false information provided by King during his interview. That is simply incorrect.

First, this is the not the first time the government has claimed King lied to Pretrial Services. The government first claimed that King lied to Pretrial Services in its Motion for Detention filed on June 24, 2024. *See* ECF No. 18 at 15-16.[2] The government repeated the allegations that King purportedly lied to Pretrial Services in the Government's Response to King's Motion to Revoke Pretrial Detention Order filed on July 30, 2024. *See* ECF No. 64 at 14. The government repeated them again in the Government's Supplemental Submission in Support of Jeffrey King's Pretrial Detention Order filed on August 29, 2024. *See* ECF No. 83 at 14.

After the government lodged these same allegations that King lied during his Pretrial Services interview in these pleadings, Pretrial Services prepared not one but two separate Addendums to the Pretrial Services Report, in which Pretrial Services continued to recommend that King be released on conditions. Notably, in the August 30, 2024 Addendum filed by Pretrial Services, the Pretrial Services Officer specifically states that she "reviewed the documents provided to the Court by all of the parties" (which presumably includes the various pleadings filed by the government in

---

[2] Ironically, in this same pleading in which the government first accused King of lying to Pretrial Services, the government falsely claimed that the handwritten note referencing Malta was found in King's Office. It was this false information that the magistrate court relied upon in detaining King in the first place. The government later admitted that its claim about this note and its connection to King was false.

which the government claims King lied during his pretrial services interview), and Pretrial Services continued to assert that there are conditions that would reasonably assure King's future appearance in Court. *See* ECF No. 85 at 2. Thus, when Pretrial Services recommended King be released on August 30, 2024, Pretrial Services was already aware of these claims by the government that King had purportedly lied during his Pretrial Services interview. If Pretrial Services believed, as the government alleges, that King lied to Pretrial Services during his interview, Pretrial Services undoubtedly would not recommend King be released.

Second, the government is wrong when it claims that King, through counsel, misrepresented his annual income in King's Response to Court's Order from August 27, 2024 hearing. *See* ECF No. 82 at 3. In King's Response, the undersigned was simply responding to a specific inquiry from the Court set forth below:

> "Judge Silver asked me to relay to you that she remains concerned about Mr. King's $400,000 salary. That, coupled with some frequent flyer miles is enough for him to potentially leave the US."[3]

The undersigned interpreted this question from the Court to be a concern that should King be released from custody, he would still be making

[3] This inquiry from the Court came in the form of email correspondence from the Courtroom Deputy, and was also sent to the government. The undersigned can provide a copy of the email correspondence to the Court if the Court would like a copy.

$400,000 a year, and this salary would be sufficient by itself to fund King's potential flight. To alleviate this concern and in response to this specific question, the undersigned made clear that should King be released, he was not going to be making any salary at all that could be used to fund his potential flight. The undersigned was simply responding to a specific inquiry from the Court and was not misrepresenting anything.

Third, the government claims that King lied about his "total net worth." King was never asked about his "total net worth" in his Pretrial Services interview, and nowhere in the Pretrial Services Report is there a mention of King's "net worth." Instead of being asked about his net worth as the government claims, King was asked about his "Employment/Financial Resources." *See* ECF No. 11 at 2-3. In response, King disclosed his current employment and millions of dollars in assets, including a luxury vehicle, millions in stocks and savings, all of which King has expressed a willingness to forfeit to the government during the pendency of this case. At bottom, King was never asked about his net worth and therefore never lied to Pretrial Services about it.

Last, the government claims King lied about his international travel because he failed to disclose an apparent trip to Mexico in March 2024. Yet in the same Pretrial Services Report, King disclosed travel to Nassau,

Bahamas; London, England; and Turkey; and trips to "Mexico several times." *See* ECF No. 11 at 2. King's disclosure of extensive foreign travel, including multiple trips to Mexico, belies the government's contention that King purportedly "lied about his foreign travel." If King was truly seeking to mislead Pretrial Services about his foreign travel, he would not have disclosed any foreign travel, and certainly would not have admitted he traveled to Mexico several times.

## **CONCLUSION**

It is undisputed that King's personal history and characteristics, including his strong ties to the community, honorable service as a veteran, close relationship to his children, lack of any criminal history, lack of any drug history, lack of any alcohol history, all weigh heavily in favor of release with conditions. King, through counsel, has worked collaboratively with the government regarding any assets in the custody and control of King that raised concerns with the Court. In part due to King's cooperation, the government has seized some of those assets already and is about to seize the rest, thereby alleviating any concerns of the Court about King's access to assets.

It is also undisputed that King has now been detained for more than three months based at least in part on false information provided to the

Court by the government that King is a risk of flight due to a connection to a handwritten note about Malta that has no connection to King. King has been detained at the government's insistence despite multiple recommendations from Pretrial Services that King be released on conditions.

In addition to relinquishing custody and control of any assets to the government, King has surrendered his own passport; remains willing to surrender the passports of his two children; and remains willing to be fitted with a GPS ankle monitor and subject to home confinement during the pendency of this case. King submits these constitute a combination of conditions that would reasonably assure King's future appearance in Court. King therefore renews his request to revoke the detention order and that he be released on conditions.

Dated this 9th of October, 2024.

Respectfully submitted,

*/s Brian T. Rafferty*, Esq.
Brian T. Rafferty, Esq.