Joshua Sabert Lowther, Esq.
Ga. Bar # 460398
Admitted *Pro Hac Vice*
Lowther | Walker LLC
101 Marietta St., NW, Ste. 3650
Atlanta, GA 30303
O 404.406.4052 | F 866.819.7859
jlowther@lowtherwalker.com
www.lowtherwalker.com

Attorney for Defendant
Alexandra Gehrke

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| United States of America,<br><br>　　　　Plaintiff,<br><br>v.<br><br>Alexandra Gehrke, *et al.*,<br><br>　　　　Defendants. | 2:24-CR-001040-ROS-1<br><br>**RESPONSE TO UNITED STATES' MEMORANDUM IN AID OF SENTENCING** |

Ms. ALEXANDRA GEHRKE responds to the United States' Memorandum in Aid of Sentencing (ECF No. 146) as follows:

**I.     The Cases Cited for the Government's Disparity Argument Are Distinguishable from the Instant Matter**

"The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." 18 U.S.C. § 3553(a). "The court, in determining the particular sentence to be imposed, shall consider . . . the need to avoid unwarranted sentence disparities among defendants *with similar records* who have been found guilty of *similar conduct*." 18 U.S.C. § 3553(a)(6) (emphases added).

In its sentencing memorandum, the Government lists five purportedly similar health-care fraud cases to support its disparity argument. U.S. Memo. in Aid of Sent'g 12, ECF No. 146. Although the Government suggested those

1

cases involve a loss amount less than the loss in this case and a sentence that is greater than what is recommended by the probation officer here, a careful review of the records in those cases reveals that critical factors distinguish those cases from the instant matter.

### a. *United States v. Matthew Ligotti*

Ms. Gehrke's record and conduct is distinguishable from Dr. Ligotti's. First, Dr. Ligotti was a *licensed and treating physician* at the time of his offense and "served as Medical Director or authorizing physician for over fifty substance abuse treatment centers, sober homes, and testing laboratories" in Florida. *United States of America v. Michael Ligotti*, No. 9:20-CR-80092-RAR-1 (S.D. Fla. July 29, 2020), Indictment ¶ 42, ECF No. 32. Ms. Gehrke was never responsible, under oath, to treat any patients. Likewise, she was not in control of, nor did she take advantage of, people struggling with mental illnesses such as addiction. Her conduct was entirely dissimilar to that of Dr. Ligotti's in this key regard.

Furthermore, in Dr. Ligotti's case, the parties jointly recommended an imprisonment of 240 months—the statutory maximum sentence for the health-care fraud conspiracy to which he pleaded. *United States of America v. Michael Ligotti*, No. 9:20-CR-80092-RAR-1 (S.D. Fla. July 29, 2020), Plea Agreement 4, ECF No. 74. The court imposed 240 months, per the parties' joint recommendation. *Ligotti*, J. in a Crim. Case, ECF No. 87.

Here, the parties have not jointly recommended a specific sentence or sentence range for Ms. Gehrke. While the statutory maximum for Ms. Gehrke is also 240 months, the probation officer recommended 186 months—a significantly lower sentence—based on the 18 U.S.C. § 3553(a) factors. PSR, Sent'g Recommendation 1, ECF No. 128. The fact that there is no stipulation as to the sentence in this case distinguishes Ms. Gehrke's record from Dr. Ligotti's entirely.

Moreover, the Government filed a Motion to Reduce Dr. Ligotti's sentence wherein it requested a 40% reduction from the statutory maximum (*Ligotti,* ECF No. 103); the Court held a hearing (*Ligotti,* ECF No. 107), and eventually reduced Dr. Ligotti's sentence to 120 months (*Ligotti*, Second Am. J. in a Crim. Case 2, ECF No. 109). Thus, Dr. Ligotti's sentence is actually 35.5% *less than* the probation officer's recommendation for Ms. Gehrke (and 50% of the statutory maximum), creating a sentencing disparity favoring *more* leniency for Ms. Gehrke, if anything.

The Government omitted the length and severity of Dr. Ligotti's conduct, that he was a treating physician, and the eventual reduction in sentence from its memorandum. The facts of Dr. Ligotti's case, therefore, do not favor a sentence above 120 months of imprisonment for Ms. Gehrke—their records and conduct are too dissimilar.

    **b.**    *United States v. Wade Ashley Walters*

Mr. Walters' charged conduct and Ms. Gehrke's charged conduct are not comparable, as Ms. Gehrke has never been accused of distributing controlled substances.

In 2019, the Government charged Mr. Walters via indictment with a staggering thirty-seven counts, including:

- Conspiracy to distribute tramadol, a controlled substance (Count 1)
- Major fraud against the United States (Counts 1s–9s)
- Distributing tramadol (Count 2–4)
- Attempt and conspiracy (Count 10s)
- Wire fraud (Count 11s–15s)
- Frauds and swindles (Counts 16s–18s)
- Conspiracy to distribute controlled substances (Count 19s; 22s)
- Selling and dispensing controlled substances (Count 20s–21; 23s–25s)
- Conspiracy (Count 26s)
- Payment to a non-licensed physician (Counts 27s–30s)
- Money laundering (31s–37s)

*United States of America v. Wade Ashley Walters*, No. 2:19-CR-00051-KS-MTP-1 (E.D. Miss. Aug. 20, 2019) Redacted Superseding Indict., ECF No. 7 (unsealed).

3

1  Relatedly, tramadol is an opioid. Overprescription of opioids such as tramadol
2  has contributed to the overall opioid overdose epidemic, with 80,816 people
3  dying in 2021. Centers for Disease Control, *U.S. Overdose Deaths In 2021*
4  *Increased Half as Much as in 2020 – But Are Still Up 15%* (last visited Aug. 7,
5  2025) https://www.cdc.gov/nchs/pressroom/nchs_press_releases/
6  2022/202205.htm#:~:text=The%20new%20data%20show%20overdose,in%2020
7  21%20compared%20to%202020. Ms. Gehrke was only charged with eight
8  counts, including allegations of conspiracy, healthcare fraud, receipt of
9  kickbacks, and transactional money laundering. Indict., ECF No. 6. Notably,
10 she was not paying non-licensed physicians or directing the prescriptions of
11 highly addictive, life-destroying opioids. Her conduct is simply not comparable
12 to that of Mr. Walters.
13         Not only did Mr. Walters contribute to a national epidemic, but he also
14 maintained his innocence for *two years* before finally pleading guilty in 2019.
15 *United States of America v. Wade Ashley Walters,* No. 2:19-CR-00051-KS-MTP-1
16 (E.D. Miss. Aug. 20, 2019), Notice of Intent to Change Plea to Guilty, ECF No.
17 229. Mr. Walters filed several pretrial motions and motions in limine, forcing
18 the Government to file trial preparation documents before pleading guilty in a
19 related case. *See generally Id.*, Docket Report (last visited Aug. 7, 2025). This
20 action wasted an enormous amount of judicial time and resources; he forced all
21 parties to prepare for trial but backed out at the last minute.
22         Oppositely, the Government filed a criminal complaint against Ms.
23 Gehrke on June 17, 2024 (Sealed Crim. Compl., ECF No. 3) and obtained an
24 indictment on June 18, 2024 (Indict., ECF No. 6). Immediately following the
25 detention hearing on July 10, 2024 (*twenty-two days* after indictment), Ms.
26 Gehrke's attorney of record informed the Government that Ms. Gehrke wished
27 to accept responsibility for her actions, proposed plea terms, and notified the
28 Government that she did not intend on proceeding to trial. Apart from motions

4

relating to detention and release pending trial, Ms. Gehrke did not file a single pretrial motion and did not cause the Government to expend additional personnel or financial resources in preparation for trial. On October 24, 2024, a *mere four months* after indictment, Ms. Gehrke formally entered a negotiated plea agreement. Plea Agreement, ECF No. 118. Despite this *rapid* resolution track, Ms. Gehrke did not request an Early Disposition Departure under U.S.S.G. § 5K3.1. Her efforts show a deep respect for the parties' and the Court's time, a complete acceptance of responsibility, and a desire to atone for her actions. Ms. Gehrke's attitude towards her (much less harmful) conduct is entirely different than Mr. Walters' sustained efforts to evade responsibility for the harm he caused.

Next, following the escalation of trial preparation in Mr. Walter's 2019 matter, he finally pleaded guilty to one count of health care fraud conspiracy *and* one count of money laundering conspiracy in a global resolution. *United States of America v. Wade Ashley Walters*, No. 2:20-CR-00026-KS-MTP-1 (S.D. Miss. July 9, 2020), Plea Agreement, ECF No. 8. The *Walters* court, despite having the option to impose a sentence of up to 120 months by statute for the healthcare fraud conspiracy, imposed 108 months of imprisonment for the healthcare fraud conspiracy and 108 months of imprisonment for the money laundering, to be served consecutively, totaling 216 months. *Walters*, J. in a Crim. Case, ECF No. 91. Thus, only 108 months of his imprisonment reflected the seriousness of the one count of health care fraud conspiracy, which is *half* of the sentence referenced by the Government in its sentencing memorandum. *Id.*

Again, here, the Government fails to provide a case that supports a sentence higher than 120 months for Ms. Gehrke.

    **c.**    *United States v. John Cruise*

Ms. Gehrke further submits that her conduct is too dissimilar to Mr. Cruise's for their sentences to be comparable.

5

1    In Mr. Cruise's case, the jury trial was scheduled for October 25, 2021. *United States of America v. John Cruise*, No. 4:18-CR-00344-1 (S.D. Tex. Jun. 20, 2018), Min. Entry, ECF No. 439. Mr. Cruise pleaded guilty on October 21, 2021, only *four days prior* to the commencement of the jury trial, resulting in an unnecessary expenditure of judicial resources. *Cruise*, Min. Entry, ECF No. 451. As discussed above, Ms. Gehrke pleaded guilty on October 24, 2024, more than two months prior to the jury trial scheduled for January 6, 2025. Min. Entry, ECF No. 116; Plea Agreement, ECF No. 118; Order, ECF No. 87. Her timely and early guilty plea has furthered the efficient administration of justice and shows her dedication to atoning for her actions.

Furthermore, on March 30, 2023, Cruise moved to withdraw his plea twenty-four days after receiving the Final Presentence Investigation Report, approximately seventeen months after his guilty plea and less than two weeks prior to his sentencing held on April 13, 2023. *Cruise*, Final PSR, ECF No. 659; Mot. to Withdraw Plea, ECF No. 682; Min. Entry, ECF No. 740. His last-minute refusal to admit to his conduct, once again, wasted judicial resources. In contrast, Ms. Gehrke has complied with her Plea Agreement and has not moved to withdraw it.

Ms. Gehrke's steadfast commitment to taking responsibility for her actions is the opposite of Mr. Cruise's flighty, last-minute attempts to escape accountability. Their cases are not comparable.

   **d.**  *United States v. Rafael Arias*

Ms. Gehrke's case is not comparable to Mr. Arias' either. Mr. Arias' factual basis reflects that he engaged in criminal activity over a period of nearly eight years, from 2007–2015. *United States of America v. Rafael Arias, et al.*, No. 1:17-CR-20509-CMA-1 (S.D. Fla. July 20, 2017), Stipulated Factual Basis in Support of Guilty Plea at 1, ECF No. 83. According to the Criminal Complaint, Ms. Gehrke's conduct lasted only twenty-eight months. Crim. Compl. at 3, ECF

6

No. 3. Thus, Mr. Arias carried on committing crimes for longer than Ms. Gehrke.

Next, despite the Government agreeing to recommend the low end of the guidelines (an estimated 235 months of imprisonment) (*Arias, et al.*, Plea Agreement, ECF No. 82), the court sentenced Mr. Arias to the statutory maximum of 240 months of imprisonment (*Id.,* J. in a Crim. Case, ECF No. 121). Subsequently, pursuant to the Government's motions, the Court ordered a 45% total reduction from the statutory maximum, resulting in a final sentence of 132 months of imprisonment. *Arias*, Gov't Mot. for a Rule 35 Reduction, ECF No. 191; Second Agreed Mot. for Reduction of Sentence Pursuant to Fed. R. of Crim. Proc. 35, ECF No. 216; Order Granting Mot. for Reduction of Sentence, ECF No. 217. Notably, the Court calculated the Rule 35 reduction from the sentence Mr. Arias received, *not* from the calculated Total Offense Level of 38. In short, the Government conveniently omitted that the Court reduced Mr. Arias' sentence to add to the illusion that his sentence was significantly more severe than the probation officer's recommendation in this case.

  **e.**  *United States v. Christopher Iruke*

It is readily distinguishable that Mr. Iruke, unlike Ms. Gehrke, who pleaded guilty early and accordingly promoted judicial economy, put the Government through a nine-day jury trial. *United States of America v. Christopher Okechukwu Iruke, et al.*, No. 2:09-CR-01008-TJH-1 (C.D. Ca. Jan. 2009), Crim. Min., ECF Nos. 297–300, 304–307, 314.

The jury convicted Mr. Iruke on eighteen counts, *including* one count of health care fraud conspiracy and seventeen counts of substantive health care fraud. *Iruke, et al.*, J., ECF No. 392. That Court sentenced Mr. Iruke to 180 months of imprisonment, which reflected the seriousness of the *eighteen* counts combined *and* his lack of acceptance of responsibility. *Id*. Here, however, Ms. Gehrke rapidly pleaded guilty to only *one* count of health care fraud

conspiracy. It would not create an impermissible disparity if Ms. Gehrke's sentence were less than 180 months.

As such, because the five cases analyzed above do not have "similar records" when compared to this case, the Government's reference to those cases actually undermines, as opposed to strengthening, its disparity argument. 18 U.S.C. § 3553(a)(6).

**II.  Conclusion**

Ms. Gehrke, based on the foregoing assertions and argument, prays that this Court issue a sentence of, *inter alia*, 120 months of imprisonment.

Date:        August 7, 2025

Respectfully submitted,

*s/ Joshua Sabert Lowther*
Joshua Sabert Lowther, Esq.
